IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTER ASSOCIATES, LLP<br>3201 S. 26TH Street<br>Philadelphia, PA 19145 | : | |
| | : | |
| And | : | |
| | : | |
| H.A. STEEN INDUSTRIES, INC.<br>3201 s. 26th Street<br>Philadelphia, PA 19145 | : | 1 4    6 0 8 2 |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| BOROUGH OF RIDLEY PARK<br>105 E. Ward Street<br>Ridley Park, PA 19078 | : | |
| | : | |
| Defendant | : | |

COMPLAINT AND REQUEST FOR
DECLARATORY AND EQUITABLE RELIEF

The Parties

1.      Anter Associates, LP ("Anter") is a Limited Partnership that is authorized to do business in the Commonwealth of Pennsylvania and is the owner of an easement over the property located at 708 Ketchum Avenue, Tax Parcel No. 37-05-382, Ridley Park Borough, PA. ("Easement").

2.      H.A. Steen Industries, Inc. ("Steen") is a Corporation authorized to do business in the Commonwealth of Pennsylvania and is engaged in the business of the erection, maintenance and leasing of outdoor advertising signs to third party advertisers.

3.      Ridley Park Borough ("Borough") is a borough in the Commonwealth of Pennsylvania and operates under the laws set forth in the Municipal Planning Code ("MPC"). 53

1

P.S. §10101 et seq. Pursuant to the rights granted in the MPC, the Borough has enacted

ordinances which purportedly pertain to the health, safety and welfare of the its citizens.

### Jurisdiction

4.      Anter's and Steen's claims arise under the First and Fourteenth Amendment of the

United States Constitution and Federal Anti-Trust laws, 15 U.S.C.A. §1 *et seq*. This Court has

original jurisdiction pursuant to 28 U.S.C. §1331. Anter's and Steen's claims under the

Constitution of the Commonwealth of Pennsylvania and the MPC are related to its federal claims

and thus, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.

§1367.

### Facts

5.      In 1988, Steen filed an application for a variance with the Borough for the

erection of a 1,200 square foot double faced outdoor advertising sign ("Sign") on the Easement.

At that time, the Borough Code of Ordinances ("Code") did not address or even mention outdoor

advertising signs and thus a variance to erect same was required.

6.      Anter leased the Easement to Steen for the purpose of erecting, maintaining and

leasing the Sign to third party advertisers.[1]

7.      Construction of the Sign showing to I-95 north and south was completed in in

1989 and the Sign has not changed to this day.

8.      On February 13, 2007, Lockridge Outdoor Advertising, LLC ("Lockridge") filed

a Complaint in Equity against the Borough in this Court seeking a Preliminary Injunction

alleging, *inter alia,* that the Borough had prohibited it from erecting five (5) signs in violation of

---

[1] In 1988, Steen entered into a lease with Robert Ketchum, the owner of 708 Ketchum Avenue, Ridley Park
Borough, PA, for the purpose of erecting, maintaining and leasing an outdoor advertising sign to third party
advertisers. In 1999, Anter purchased an easement from the Estate of Robert Ketchum for the Sign and its rights.

2

its First Amendment rights, that the restrictions under the Code were unconstitutional under

Pennsylvania Law, and that the preferences given to certain classes of signs constituted illegal

preferential treatment and were violative of the Fourteenth Amendment. *See* Lockridge Outdoor

Advertising, LLC v. Borough of Ridley Park, 2:07-cv-00602 (U.C.D.C. of E.D. of

Pa.)("Lockridge Litigation").

     9.     In September 2007, the parties in Lockridge agreed to the entry of a Consent

Order to Stay Case which provided *inter alia*:

     a.     The Borough would make its best efforts to assist Lockridge in obtaining a lease agreement with Delaware County or other relevant entity to permit Lockridge to install an outdoor advertising sign on County owned property adjacent to I-95.

     b.     Lockridge would operate the sign which would eventually revert to ownership by the county. Until such reversion, Lockridge would pay Delaware County for the use of the sign.

     c.     The Borough would attempt to pass sign regulations within six months.

     d.     The Borough would supply the necessary permits, approvals, certifications and the like – such as building permits and electrical permits to allow the sign to be erected.

A true and correct copy of this Order is attached hereto as Exhibit "A"

     10.     In October 2009, in accordance with the Consent Order in the Lockridge

Litigation, the Borough enacted a Sign Code, a true and correct copy of which is attached hereto

as Exhibit "B", which regulates the placement and location as well as the construction of

billboards in the Borough.[2]

     11.     Section 1509 of the Sign Code provides that only one billboard may be erected

anywhere in the Borough and only on one piece of property that happens to be owned by the

---

[2] The dockets reflect that during the period from the entry of the Consent Order to the enactment of the Sign Code, the only activity that took place in the Lockridge Litigation was the replacement of counsel.

Borough. Section 1509 also provides that the billboard may have a sign face area of up to 1200 square feet and may be up to 120 feet in height.

12. In October 2011, the parties to the Lockridge Litigation settled the case in accordance with the terms set forth in the Order entered in September 2009 and Section 1509 of the Sign Code. That is, Lockridge was given a lease by the Borough for the erection of a billboard on the only property within the Borough which is legally zoned for an outdoor advertising sign. This sign happens to be owned by the Borough!

13. Since that time, Lockridge has sold its interest in the sign and the settlement agreement to Lamar Advertising, Co. ("Lamar") who subsequently built a sign which is 120 feet in height, and has a 1,200 square foot variable message sign face.

14. Lamar pays a yearly rental fee to the Borough for the use of the Borough property.

15. In 2013, the Pennsylvania Department of Transportation ("PennDOT") completed the erection of sound barriers along I-95, directly in front of the Sign which blocks and interferes with the site lines of the Sign for southbound traffic on I-95 at the Sign's current height.[3]

16. Because of the blockage of the Sign by the sound barriers, Steen is unable to lease the southbound face of the Sign to third party advertisers although Steen has been attempting to lease it at a reduced rate.

17. Under the terms of the lease between Anter and Steen, Steen is no longer obligated to pay the full rental amount to Anter for the Sign.

18. Accordingly, in October 2013, Steen filed an application with the Borough to raise the Sign face approximately 28 feet which would bring it above the PennDOT sound

---

[3] The amount of the interference with the ability of southbound traffic on I-95 to see the Sign depends on precisely where on I-95 the driver is located when trying to view the Sign.

4

barriers. Even with this proposed increase in height, the Sign would be less than the 120 feet that

is permitted by Section 1509 of the Sign Code; and allowed to Lamar pursuant to the settlement

in the Lockridge Litigation, which ultimately benefits the Borough.

19.     Steen's application was denied by the Borough building inspector on January 7,

2014, stating that the proposed change in height of the sign must be approved by the Borough

Zoning Hearing Board ("Board").

20.     On February 5, 2014, Anter and Steen filed an appeal of the building inspector's

denial to the Board.

21.     A hearing on the appeal was held on April 9, 2014.

22.     Anter and Steen's appeal was denied by the Board on May 14, 2014, despite the

fact that the Borough Code permits and receives rent for the 120 foot high sign erected on the

Borough property leased to Lamar. In other words, the Borough, through Lamar, unfairly

competes with Anter and Steen in the outdoor advertising business as now Lamar has the only

sign permitted to be 120 feet high which can be viewed by motorists traveling southbound on I-

95, despite the erection of the PennDOT sound barriers.

COUNT I – THE BOROUGH
SIGN CODE IS UNCONSTITUTIONAL

23.     Paragraphs 1 through 22 are incorporated herein by reference as though set forth

in full.

24.     The restrictions on the placement, size and copy contained on outdoor advertising

signs by the Borough is an unconstitutional restriction on speech.

25.     The Sign Code permits the Borough unbridled discretion as to whether a sign will be allowed, regardless of whether it impacts the health, safety and welfare of the citizens of the Borough.

26.     The content based regulatory scheme imposed by the Borough unlawfully restricts both commercial and non-commercial speech and impermissibly discriminates among commercial speech in violation of the First Amendment and the Constitution of the Commonwealth of Pennsylvania.

27.     These restrictions are invalid because they allow Borough officials to regulate both commercial and noncommercial speech and yet fail to include any purpose, rationale or findings to support their comprehensive regulation and prohibition of constitutionally protected speech.  Thus, the Borough has not and cannot meet its burden of showing that each regulation will advance any substantial government interest.

28.     Accordingly, this Court should declare the Borough's Sign Code as presently written invalid.

## COUNT  II - THE SIGN
## RESTRICTIONS VIOLATE THE SHERMAN ACT

29.     Paragraphs 1 through 28 are incorporated herein by reference as though set forth in full.

30.     Section 1 of the Sherman Act, 15 U.S.C. § 1, provides that every contract and combination in restraint of trade or commerce among the several states is declared to be illegal.

31.     Federal antitrust laws prohibit a state in the exercise of its sovereign power, from imposing anti-competitive restraints unless it is doing so solely for clearly articulated affirmatively expressed state policy.  *Parker v. Brown,* 317 U.S. 341, 63 S. Ct. 307 (1943).

6

32.     A municipality is not sovereign, and thus, it is not entitled to the *Parker* exception to governmental competition with private industry.

33.     Antitrust laws are key to the preservation of free enterprise and freedom to compete which is guaranteed to every business, regardless of size. *U.S. v. Topco Associates, Inc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 1135 (1972).

34.     Similarly, local governments may not compete with private industry as the governmental entity will always have an unfair advantage over the private business. *Alco Parking Corporation v. City of Pittsburgh*, 453 Pa. 245, 307 A.2d 851 (1973).

35.     In drafting its Sign Code so that only the Lockridge (and now Lamar) billboard can be erected and only on Borough property for which it receives yearly income, and only that billboard can be 120 feet in height, the Borough, is unfairly competing with Anter and Steen as only that sign is high enough so as not to be blocked by the PennDOT sound barriers and thus, it will be more attractive to advertisers. In other words, in denying Steen the right to raise the Sign the Borough is unfairly competing with Anter and Steen.

36.     In drafting its Sign Code so that 120 foot high outdoor advertising signs are prohibited throughout the Borough with the exception of the MR District which consists exclusively of the one Borough owned property that is leased to Lamar, the Borough has an unfair advantage over and is precluding Anter and Steen from fairly competing in the outdoor advertising market.

37.     In drafting its Sign Code so that it need not have an open bidding process for use of Borough property to erect a billboard, the Borough has imposed unfair competitive restraints upon Anter and Steen.

7

38.     In drafting its Sign Code so that it need not have an open bidding process for use of Borough property to erect a billboard, the Borough has an unfair competitive advantage over Anter and Steen

39.     The Borough's conduct in this case constitutes unfair competition in violation of the Sherman Act and federal antitrust laws.

## COUNT III – THE SIGN CODE
## IS UNCONSTITUTIONALLY EXCLUSIONARY

40.     Paragraphs 1 through 39 are incorporated by reference as though set forth in full.

41 .    The Commonwealth of Pennsylvania has held that a municipality may not ban a use unless it bears a strong relationship to the health, safety and welfare of the community. *Macioce v. Zoning Hearing Bd. Of the Borough of Baldwin*, 850 A.2d 882, 888 (Pa. Cmwlth. 2004).

42.     Here the Borough has banned all billboards (except one and only on its property) without providing even a vague statement of purpose for this limitation.  Accordingly, the Sign Code enacted by the Borough is unconstitutional, exclusionary and invalid.

## COUNT IV – ULTRA VIRES CONDUCT

43.     Paragraphs 1 through 42 are incorporated herein by reference as set forth in full.

44.     Section 46201 of the MPC requires that when a Borough seeks to sell or lease municipal property, it must do so by an open bidding process.

45.     Specifically, 53 P.S. §46201(4)  provides in pertinent part:

> No real estate owned by the township having a value in excess of fifteen hundred dollars ($1,500) may be sold except to the highest bidder after due notice by advertisement for bids or advertisement of a public auction in one newspaper of general circulation in the

8

township. The advertisement shall be published once not less than
ten days before the date set for the opening of bids or public auction,
and the date for opening bids or public auction shall be announced in the
advertisement. . . . The award of contracts shall only be made by public
announcement at a regular or special meeting of council or at the public
action. . . .

46.     In the case before the court, no such process took place.

47.     The Borough's action in leasing the property to Lockridge who assigned it to

Lamar without engaging in the required advertising and a bidding process is *ultra vires* and

prohibited by the MPC.

48.     Such conduct on the part of the Borough was *ultra vires* and requires that the

entire transaction between the Borough and Lockridge and now Lamar be invalidated or voided.

## COUNT IV – THE BOROUGH HAS
## ENGAGED IN ILLEGAL SPOT ZONING

49.     Paragraphs 1 through 48 are incorporated herein by reference as set forth in full.

50.     A property has been illegally spot zoned where it is a peninsula surrounded on all

sides by inconsistently zoned land.

51.     Spot zoning is a form of discriminatory zoning, where one piece of land is treated

differently than all other properties in the same community. Lawful zoning requires that the

entire community be kept in mind.

52.     Section 1509 of the Sign Code provides that billboards may only be erected in the

Interstate Fronting Civic Use District ("MR").

53.     There is only one parcel of land in the Borough that is zoned MR and which

happens to be owned by the Borough, and, upon information and belief, it was re-zoned to its

MR status solely for the purpose of ending the Lockridge Litigation. See Borough Zoning Map

9

attached hereto as Exhibit "C". Such conduct on the part of the Borough constitutes illegal spot zoning.

WHEREFORE, Plaintiff Anter Associates, LP and H.A. Steen Industries, Inc. seek judgment in their favor and against the Borough of Ridley Park, to include the following:

a. A declaration that the Sign Code is unconstitutional, invalid and non-binding both facially and as applied to Anter and Steen;

b. An Order requiring the Borough to grant Anter and Steen a permit to raise the Sign to a height not to exceed 120 feet;

c. A revocation of the illegal spot zoning of the MR parcel;

e. An award of compensatory damages for the loss of income suffered as a result of the Borough's unfair competition;

f. An award of nominal damages as a matter of law based upon the Boroughs of unconstitutional sign restrictions;

g. Such other and further relief as this Court may deem appropriate, just and equitable.

Dated: 10/24/14

Leslie M. Gerstein, Esquire
Identification 40952
3201 S. 26th Street
Philadelphia, PA 19145
(215) 952-3549
(215) 755-6955 (fax)
LeslieG@Steen.com

Counsel for Anter Associates, LP and
H.A. Steen Industries, Inc.

10

## VERIFICATION

I, Steven Gorlechen, Esquire state that I am General Counsel for Anter Associates, LP, and President of H.A. Steen Industries, Inc., Plaintiffs in this case, that I am authorized to make this Verification on their behalf, and that the statements set forth in the foregoing Complaint in Equity are true and correct to the best of my knowledge, information and belief; I understand that these statements are made subject to the penalties of 18 Pa.C.S. §4904 relating to unsworn falsification to authorities.

Date: 10/24/2014

Steven Gorlechen, Esquire

11

Case 2:14-cv-06082-WY   Document 1   Filed 10/24/14   Page 12 of 32
Case 2:07-cv-00602-TON   Document 10   Filed 09/06/07   Page 1 of 3
Case 2:07-cv-00602-TON   Document 9   Filed 09/05/2007   Page 1 of 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LOCKRIDGE OUTDOOR ADVERTISING, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION ) ) NO.: 07-0602 |
| BOROUGH OF RIDLEY PARK, PENNSYLVANIA, | ) ) ) |
| Defendant. | ) ) ) |

### CONSENT ORDER TO STAY CASE

This Consent Order is entered upon agreement of the parties Lockridge Outdoor Advertising, LLC ("Lockridge") and the Borough of Ridley Park, Pennsylvania ("Borough").

WHEREAS Lockridge submitted five applications to the Borough in 2006 for outdoor advertising signs which were denied pursuant to the Borough's sign regulations; and

WHEREAS Lockridge brought this lawsuit challenging the denials and the Borough's sign regulations and the parties wish to resolve their disputes; and

WHEREAS, the Borough denies all claims and allegations made by Lockridge.

NOW THEREFORE, the Court orders as follows:

1.    This case is hereby stayed. If all necessary items listed below are concluded the case will be dismissed with prejudice via the Court's entry of the Order of Dismissal attached hereto as Exhibit A. The Court retains jurisdiction to enforce this Consent Order.

2.    The Borough shall make best efforts to assist Lockridge in obtaining a lease agreement with Delaware County, or other applicable County entity, to permit the Lockridge to install a sign on County-owned property adjacent to the Interstate 95 right-of-way across from the Boeing Helicopter manufacturing facility. The lease shall be on substantially the same terms as shown on Exhibit B hereto.

EXHIBIT "A"

Case 2:14-cv-06082-WY   Document 1   Filed 10/24/14   Page 13 of 32
Case 2:07-cv-00602-TON   Document 10   Filed 09/06/07   Page 2 of 3
Case 2:07-cv-00602-TON   Document 9   Filed 09/05/2007   Page 2 of 3

3.    Pursuant to such agreement Lockridge shall install the sign with banner portions atop each side stating, "Welcome to Ridley Park" and deed the sign to the County. Lockridge will be allowed to operate the sign before it later reverts to full ownership and control by the County. During such term the County will be compensated as shown in the agreement and shall, under certain circumstances, be allotted one slot in the advertising rotation on such sign for advertisements of its choosing, such as community and economic development messages.

4.    The Borough will act in good faith to consider and pass fully constitutional sign regulations within six months. Lockridge agrees to compensate The Webb Law Group to offer reasonable assistance to the Borough during this process not to exceed $5,000 in attorney billing.

5.    If the lease with the County cannot be obtained by Lockridge in accordance with Paragraph 2 on or before October 1, 2007, or any County, Commonwealth, or federal authority, or any other party, acts to prevent or remove the proposed sign along Interstate 95 prior to entry of the Order of Dismissal, then Lockridge shall have the option to notify the Court and Borough in writing that it is withdrawing from this consent arrangement. If such notice is made, the stay shall be lifted and the litigation shall proceed as if this Consent Order was never entered.

6.    The Borough shall provide necessary permits, inspections, approvals, or certifications – such as building permits, electrical permits, or certifications to the Department of Transportation – to allow for the sign to be erected and operated as described in Exhibit B provided that Lockridge has otherwise complied with all applicable laws, regulations, ordinances, codes, and requirements, of any kind. Such items will be issued or completed as promptly as possible.

2

Case 2:14-cv-06082-WY   Document 1   Filed 10/24/14   Page 14 of 32
Case 2:07-cv-00602-TON   Document 10   Filed 09/06/07   Page 3 of 3
Case 2:07-cv-00602-TON   Document 9   Filed 09/05/2007   Page 3 of 3

SO ORDERED this __6__ day of __Sept.__, 2007.

_____

Hon. Thomas N. O'Neill, Jr.
United States District Judge (Senior)

CONSENTED TO BY:

s/ E. Adam Webb
Counsel for Plaintiff

s/ Michael Raffaele
Counsel for Defendant

3

Article 15
SIGNS

## 1500 Purposes

The Borough recognizes that signs perform an important function in identifying properties, businesses, services, residences, events, and other matters of public interest. It is the intent of this Article to:

1. Set standards and provide controls that permit reasonable use of signs and enhance the character of the Borough.

2. Encourage sign design that builds on the traditional town image and visual environment that the Borough seeks to promote.

3. Avoid excessive competition for large or multiple signs, so that permitted signs provide identification and direction while minimizing clutter, unsightliness, confusion, and hazardous distractions to motorists.

4. Protect against hazards to traffic and pedestrian safety.

## 1501 Scope and Applicability

Any sign hereafter erected shall conform to the provisions of this Article and any other ordinance or regulations of the Borough relating thereto. Any sign not specifically authorized by the provisions of this Article shall not be erected in the Borough.

1. It shall be unlawful for any person, firm, or corporation to erect, alter, rebuild, enlarge, extend, or relocate signs listed in Section 1508 (signs for which a permit is required) without first obtaining a permit from the Borough, except for those signs listed in Section 1504 (exempt signs).

2. Application for such permits shall be made in writing to the Borough in accordance with Section 1506.

3. The Zoning Officer is hereby authorized to revoke any permit issued by the Borough upon failure of the holder thereof to comply with any provision of this Article.

## 1502 General Regulations

The following restrictions and regulations shall be applicable to all signs unless otherwise specified:

EXHIBIT "B"

*Ridley Park Borough Code*

1.  All signs, excluding awning and window signs, shall be constructed only from wood, metal, stone, or other material as determined by the Borough which has the general appearance of structures composed primarily of wood, metal, or stone with painted, engraved, or raised messages. Sign materials should complement the original construction materials and architectural style of the building façade on which they are to be displayed. If plywood is used, medium density overlay shall be used as a minimum grade. Bare plywood is prohibited.

2.  In selecting the principal colors for a sign, colors that complement the color of the building should be used.

3.  Where permitted, signs shall be illuminated only in accordance with the following regulations as authorized in an appropriate sign permit:

    a.  Light sources shall be shielded from all adjacent properties and streets and shall not be of such intensity as to cause glare hazardous to pedestrians or motorists.

    b.  Signs using internal illumination shall be designed so that when illuminated at night, only the letters and logos of the sign are visible. Individual, solid letters with internal lighting tubes which backlight a wall in a halo effect are permitted.

    c.  Permits for illuminated signs will not be issued without an approved electrical permit. All work shall be completed in full compliance with the Electrical Code as set forth in the most recently published Pennsylvania Uniform Construction Code.

    d.  No illuminated sign shall be lighted on days when the business or permitted use is not open for business.

    e.  Internally illuminated signs are not permitted in Historic Districts.

4.  The electrical supply to all exterior signs, whether to the sign itself or to lighting fixtures positioned to illuminate the sign, shall be provided by means of concealed electrical cables. Electrical supply to freestanding signs shall be provided by means of underground cables. Applications for electrical permits shall be filed at the same time as the sign permit application.

5.  No sign shall create a public nuisance by emitting smoke, sound, vapor, beams or rays, particle emission, or odors.

6.  Any business that has closed shall remove any signs associated with the business within sixty (60) days after it closes. The owner of the premises shall have the responsibility to ensure that such signs are removed within the sixty (60)-day period.

7.  No sign or sign structure shall be erected unless it complies with all applicable requirements of the Pennsylvania Uniform Construction Code.

8. All signs and sign structures shall be kept in good repair and in presentable condition so that all sign information is clearly legible. Any sign found by the Zoning Officer to show deterioration, rust, faded colors, discoloration, holes, and missing parts or informational items shall constitute a violation of this Article.

9. Except for official/traffic, directional, and incidental signs, no sign shall be erected within the right-of-way lines of any public street, and no sign shall be closer than six (6) feet to the right-of-way line of a public street, unless specifically authorized by other ordinances and regulations of the Borough of Ridley Park or other governmental bodies or agencies having jurisdiction or regulatory authority in the matter.

10. All permanent signs over four (4) square feet in size shall be constructed by a professional sign company.

11. Except for official signs, incidental signs, directional signs, wayfinding signs, or billboards, all permanent signs shall be located on the property to which the text or message applies.

12. Freestanding Pole Signs

    a. The bottom or lowest edge of any freestanding pole sign shall be no closer to the ground than seven (7) feet. Not more than two (2) feet above the ground level can be devoted to and maintained for plantings. If such plantings are installed, they shall be maintained at the maximum height of two (2) feet and shall be free of weeds, debris, and other undesirable material.

    b. The maximum height of such signs shall be twenty (20) feet in residential and the C-1 districts and thirty-five (35) feet in all other districts measured from grade level, unless specifically stated otherwise in regulations for a particular district.

    c. All single-post pole signs shall be made of metal, except for those used in residential districts which may be made of pressure-treated timbers. All such posts shall be embedded in the ground at least three (3) feet six (6) inches unless otherwise directed by the Zoning Officer.

    d. Freestanding pole signs will be permitted in residential areas only when set back a minimum distance of six (6) feet behind the front property line, and no portion of such sign shall be less than six (6) feet behind the front property line.

    e. There shall be a distance of not less than one hundred (100) feet between free-standing pole signs along the same road frontage.

13. Freestanding Ground Signs

   a.  The top edge of a ground sign shall be a maximum of six (6) feet above ground level.

   b.  Ground signs shall be supported and permanently placed by embedding, anchoring, or connecting the sign in such a manner as to incorporate it into the landscape or architectural design scheme.

   c.  The setback shall be as required for freestanding pole signs in Section 1502.12 above.

   d.  Illumination shall be by concealed or indirect lighting.

14. Window Signs

   A maximum of twenty (20) percent of the total window area may be used for permanent signs that are etched, painted, or permanently affixed to the window. Neon signs in a window shall have a maximum of ten (10) percent coverage or eight (8) square feet, whichever is less.

15. Temporary Signs

   a.  The use of any temporary sign, except for signs exempt by Section 1504, shall require a permit that shall be effective for not more than thirty (30) days.

   b.  Such signs shall not obstruct access to or from any door, window, fire escape, or ventilating equipment nor be attached to any standpipe or fire escape.

   c.  Temporary signs shall be removed immediately upon expiration of the permit.

   d.  The size of these signs shall not exceed one-third (1/3) square foot of sign area for each linear foot of building width.

   e.  Temporary commercial advertising signs shall not be attached to fences.

   f.  After expiration of a thirty (30) day period for the temporary sign permit, the applicant may apply for another such permit. However, not more than four (4) such permits for a temporary sign shall be issued to the same applicant within any twelve (12) month period.

16. Awning Signs and Canopy Signs

   a.  A permit shall be obtained from the Zoning Officer for the erection, repair, or replacement of any awning sign or canopy sign, following a review by the Planning Commission.

b.  Awning signs and canopy signs shall be designed and constructed to withstand wind or other lateral loads, and live loads as required by the Uniform Construction Code, with due allowance for shape, open construction, and similar features that receive the pressure and loads.

c.  All awning signs shall have a minimum clearance of seven (7) feet from the sidewalk to the lowest part of the metal framework of any awning, except that the bottom of the valance of canvas awnings shall have a minimum clearance of six (6) feet nine (9) inches above the sidewalk.

d.  Retractable or fixed awnings are permitted to project up to four (4) feet into a public right-of-way, provided that they meet clearance requirements and are no closer than one (1) foot to a curb line.

e.  No post of any canopy sign is permitted within a public right-of-way.

f.  All awnings and canopies shall have totally opaque covering material.

g.  Lettering delineating the name of the establishment only and logos shall be permitted only on the face of the awning or canopy that is parallel to the building façade.

17. Real Estate "For Sale" or Development Signs

Signs that advertise real estate for sale shall not exceed sixteen (16) square feet in residential districts and thirty (30) square feet in nonresidential districts. Such signs shall be removed from the property in question not less than seven (7) days after the date of settlement.

## 1503   Prohibited Signs

Unlawful signs include, but are not limited to:

1. Any sign which by color, shape, or location conflicts with or resembles a traffic signal device.

2. Signs attached to rocks, utility poles, parking meters, traffic signposts, traffic signals or control devices, street signs, or historical markers.

3. Signs attached to trees, shrubs, or any living vegetative matter.

4. Signs erected without the permission of the property owner or authorized agent.

5. Signs that create a hazard by obstructing the clear view of vehicles and pedestrian traffic.

*Ridley Park Borough Code*

6. Animated signs.

7. Any sign that obstructs free ingress to or egress from a required door, window, fire escape, or other required exit.

8. Vehicular signs.

9. Abandoned signs.

10. Flashing signs.

11. Revolving signs.

12. Tethered balloons, filled either by gas or heated air.

13. Roof signs.

14. Wall signs that cover windows or architectural detail.

15. Banners longer than one hundred fifty (150) percent of the street frontage of the premises.

16. Signs with reflective backgrounds.

## 1504   Exempt Signs

The following signs to the extent indicated are exempt from the requirements of this Article, from the need to secure permits, and from the allowable sign area requirements, except as specified below in this section:

1. Official signs posted in the strict performance of lawful governmental functions, such as roadway signs indicating route number, street name, traffic, and parking.

2. Small signs not exceeding two (2) square feet that are necessary for traffic movement on private property.

3. Memorial or historic markers where approved by the Historical and Architectural Review Board or the Planning Commission.

4. Small temporary signs, provided that:

   a. The size of any such sign shall not exceed four (4) square feet.

   b. Up to three (3) temporary signs shall be allowed on any parcel without a permit so long as their aggregate square footage does not exceed ten (10) square feet.

5. Nameplate signs on private residences, provided that they do not exceed one (1) square foot.

## 1505   Nonconforming Signs

1. Nothing in this Article shall relieve the owners or users of legally nonconforming signs, or the owners of the property on which legally nonconforming signs are located, from any provisions of this Article regarding the safety, maintenance, and repair of signs.

2. Should fifty (50) percent or more of any legally nonconforming sign be damaged by any means, it shall be removed and not reconstructed except in conformity with the provisions of this Article.

3. The existence of a legally nonconforming sign on a single or multiple occupancy premises shall not prevent the erection or placement of another sign on the premises, if the new sign meets the requirements of this Article. However, the total number of signs and the area of the signs shall not exceed the requirements of this Article.

4. A legally nonconforming sign shall immediately lose its legally nonconforming designation if the sign is altered in any way. At that point, the sign shall be immediately brought into compliance with this Article and a new permit secured or the sign shall be removed.

5. Signs on the premises of legally nonconforming uses, such as an office in a residential area, may remain until the existing use of the premises is discontinued. If a sign wears out or is damaged or is changed for any other reason, the number, size, and area of all signs relating to the premises shall not be increased beyond the size they were at the time this Article was adopted.

6. If a legally nonconforming sign lists more than one (1) business, new businesses may be added without affecting the nonconforming status of the sign. However, the sign may not be altered in any way that extends the sign's nonconformity in any manner.

## 1506   Permits

Unless otherwise provided by this Article, all signs shall require permits and payment of fees as described in this section. No permit is required for the maintenance of a sign or for a change of copy on a legally conforming painted, printed, or changeable copy sign. For the purposes of this section, "maintenance" shall include any repainting of a sign that does not otherwise change its message or appearance.

1. It shall be unlawful for any person, firm, or corporation to erect, alter, repair, or relocate any sign within the Borough of Ridley Park without first obtaining a sign permit, unless the sign is specifically exempt from the permit requirements.

*Ridley Park Borough Code*

2. Applications for sign permits shall be made upon forms provided by the Zoning Officer and shall contain and/or have attached the following information where relevant:

3. A permit fee, to be established from time to time by resolution of Borough Council, shall be paid. .

4. The Borough shall process all sign permit applications within thirty (30) days of the Borough's receipt of an application and upon remittance of the appropriate sign permit fee. The Zoning Officer shall give notice to the applicant of his/her decision by hand delivery or by mailing such notice by certified mail, return receipt requested, to the address on the permit application on or before the thirtieth (30th) day. If the decision of the Zoning Officer is to deny the application, the decision shall state the grounds upon which the denial is based. Failure of the Borough to act within the thirty (30) day period shall be deemed an approval of the permit.

## 1507   Special Regulations for Signs in Historic Districts

In addition to all other requirements of this Article, the following regulations shall be applicable to any sign placed in an Historic District:

1. No sign shall be erected or altered until an application for a Certificate of Appropriateness has been reviewed and approved by the Ridley Park Historical and Architectural Review Board (HARB) and after Borough Council has issued a Certificate of Appropriateness. The HARB shall ensure that the proposed sign is appropriate:

   a. Regarding the style, period, type, size, and scale of the building for which it is proposed.

   b. Regarding consistency with other signs in the district.

   c. All applications for a Certificate of Appropriateness must contain the following information:

      (1) A current color photograph of the property.

      (2) An illustration of the building façade showing the proposed sign.

      (3) A scaled drawing showing the sign itself and including the size, materials, colors, lighting, lettering, and method of attachment. Material samples may be required.

      (4) For ground signs, a site plan indicating the location of the sign.

      (5) The type of illumination.

## 1508   Signs for Which a Permit Is Required

The following signs and no other are permitted in the respective districts, provided that they meet all applicable requirements of this Article.

1. Signs in Residential Districts

   a. Identification signs for apartment buildings, townhouse developments, churches/religious uses, and similar permitted uses other than individual dwellings, provided that:

      (1) The type of sign permitted shall be wall and freestanding ground signs only.

      (2) The size of any such sign shall not exceed sixteen (16) square feet; however, in the R-3 district twenty-four (24) square feet is permitted.

      (3) Ground signs shall have a maximum height of six (6) feet.

      (4) Not more than one (1) sign shall be permitted for each permitted use or structure unless such premises fronts on two (2) streets, then no more than two (2) signs, one (1) on each street, shall be permitted.

      (5) No such sign shall be illuminated except by concealed or indirect lighting attached to the sign itself.

   b. Permanent signs for public or private schools, religious uses, and other nonresidential uses, provided that:

      (1) These signs shall be wall signs and freestanding signs; however, changeable copy shall be permitted for schools and churches, temples, etc.

      (2) The size of any such sign shall not exceed twenty-four (24) square feet.

      (3) Not more than one (1) sign shall be permitted for each permitted use or residential structure unless such premises fronts on two (2) streets, then no more than two (2) signs, one (1) on each street, shall be permitted.

      (4) No such sign shall be illuminated except by concealed or indirect lighting attached to the sign itself.

   c. Signs identifying nonresidential nonconforming uses, provided that they meet the same requirements as subsection 1.a above.

   d. Signs identifying residential professional offices, provided that such sign shall not exceed twelve (12) square feet.

*Ridley Park Borough Code*

      e.  Nameplate signs which do not exceed two (2) square feet. Also see Exempt Signs, Section 1504 above.

  2.  Signs in the C-1 Commercial District

      a.  Any sign permitted in Residential districts.

      b.  Wall signs, projecting signs, freestanding ground signs, freestanding pole signs, awning signs, and canopy signs.

      c.  Maximum sign dimensions:

          (1) Wall signs and awning signs – one (1) square foot of sign area for each foot of building width with a maximum of thirty (30) square feet.

          (2) Freestanding signs (ground signs and pole signs) – sixteen (16) square feet.

          (3) Projecting signs and canopy signs – ten (10) square feet.

      d.  Not more than three (3) types of permitted signs shall be permitted on any one premises, provided that the combined area of these signs shall not exceed fifty (50) square feet.

  3.  Signs in the C-2 Commercial District

      a.  Any sign permitted in Residential districts or the C-1 district.

      b.  Wall signs, projecting signs, freestanding ground signs, freestanding pole signs, awning signs, and canopy signs.

      c.  Maximum sign dimensions:

          (1) Wall signs and awning signs – one (1) square foot of sign area for each foot of building width with a maximum of fifty (50) square feet.

          (2) Freestanding signs (ground signs and pole signs) – twenty-four (24) square feet.

          (3) Projecting signs and canopy signs – sixteen (16) square feet.

      d.  Not more than three (3) types of signs shall be permitted on any one premises, provided that the combined area of these signs shall not exceed seventy (70) square feet.

  4.  Signs in the Medical Campus District

Nov. 2. 2011 12:03PM c-boxborough w/y ridley park    No. 1269    P. 12
Case 2:14-cv-06008-WY Document 1    Filed 10/24/14    Page 25 of 32

*Zoning*                                                    *Article 15 – Signs*

    a.  Any sign permitted in Residential districts or the C-1 district.

    b.  Wall signs, projecting signs, freestanding ground signs, freestanding pole, awning signs, and canopy signs

    c.  Maximum sign dimensions:

        (1)  Wall signs and awning signs – sixty (60) square feet.

        (2)  Freestanding signs (ground signs and pole signs) – fifty (50) square feet.

        (3)  Projecting signs and canopy signs – twenty (20) square feet.

        (4)  For buildings that have a front width of one hundred (100) feet or more, two (2) wall signs shall be permitted on that frontage. In this case, a special exception shall be required. In this case, the maximum sign area of such wall signs combined shall not exceed one hundred (100) square feet.

        (5)  Not more than three (3) types of the above noted signs shall be permitted on any one premises, provided that the combined area of these signs shall not exceed one hundred twenty (120) square feet.

5.  Signs in the Interstate Fronting Civic Use District

    Same as in the Medical Campus district, provided that billboards are permitted, subject to Section 1509.

6.  Signs in the Parks and Open Space District

    Same as in the C-1 Commercial district, provided that no sign shall be illuminated except by concealed or indirect lighting attached to the sign itself or on the ground directed upwards at the sign. The intent is to protect adjacent residential areas from impacts of light or glare.

7.  Signs in the Industrial District

    a.  Wall signs, freestanding ground signs, and freestanding pole signs.

    b.  Maximum sign dimensions:

        (1)  Wall signs – one (1) square foot of sign area for each foot of building width with a maximum of seventy-five (75) square feet.

        (2)  Freestanding signs (ground signs and pole signs) – fifty (50) square feet.

*Ridley Park Borough Code*

   c. For buildings that have a front width of one hundred (100) feet or more, two (2) wall signs shall be permitted on that frontage. In this case, a special exception shall be required. In this case the maximum sign area shall not exceed one hundred twenty-five (125) square feet.

   d. Not more than two (2) types of signs shall be permitted on any one premises, provided that the combined area of these signs shall not exceed one hundred fifty (150) square feet.

## 1509   Billboards

1. The Borough has considered the need for the promotion of local and county businesses, organizations, and events to the motoring public on Interstate 95, which abuts a small portion of the Borough. In light of this need, the Borough will allow the installation of one (1) Borough- or County-owned billboard to be located in the Interstate Fronting Civic Use zoning district. Such billboard may be operated by a third party for general commercial purposes but must also have availability for community announcements. The following requirements shall apply to the billboard:

   a. The billboard will be allowed to have a gross surface area no greater than one thousand two hundred (1,200) square feet.

   b. The billboard shall be set back not less than five hundred (500) feet (measured by radial spacing) from any other zoning district. Distance measurement shall be made horizontally in all directions from the nearest edge of the sign face.

   c. The billboard structure shall have a maximum height above the grade at the sign base of one hundred twenty (120) feet.

   d. It shall be located within two hundred (200) feet of the right-of-way of Interstate 95.

   e. The design and configuration shall include changeable message technology and shall comply with the requirements of the Pennsylvania Department of Transportation for a general outdoor advertising sign or billboard.

   f. It shall not display any obscene material.

   g. It shall not emit noise.

   h. The billboard shall not be mounted on a roof, wall, or face or other part of a building or any other structure, including trees.

   i. External illumination of any and all sign faces on the billboard shall be shielded to prevent the light source from being seen from adjacent or nearby residential properties, streets, or sidewalks.

2. All billboard standards herein shall exist in full force and effect in conjunction with all sign standards existing in the most recent edition of the International Construction Code (ICC), as amended. Whenever any conflict exists between this chapter and the ICC Code, the more restrictive provisions shall have precedence.

## 1510   Other Off-premises Signs

1. Off-premises signs shall be permitted to be affixed or attached to the walls of bus shelters.



Ridley Park Borough
- Zoning -

R-1 - Residential District
R-2 - Residential District
R-3 - Residential District
C-1 - Commercial District
C-2 - Commercial District
MCD - Medical Campus District
I - Industrial District
POS - Parks and Open Space District
MR - Interstate Fronting Civic Use District

EXHIBIT "C"

Prepared by
Delaware County
Planning Department
Adopted October 2009

NOTES:
1. Delaware County Planning Department - Zoning
2. Delaware County Board of Assessments - Parcels



**APPENDIX G**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ANTER ASSOCIATES, L.P. and H.A. STEEN
INDUSTRIES, INC.

V.

BOROUGH OF RIDLEY PARK

Civil Action
No: _____

## DISCLOSURE STATEMENT FORM

Please check one box:

✓     The nongovernmental corporate party, _____
, in the above listed civil action does not have any parent corporation and
publicly held corporation that owns 10% or more of its stock.

❑     The nongovernmental corporate party, _____
, in the above listed civil action has the following parent corporation(s) and
publicly held corporation(s) that owns 10% or more of its stock:

_____

_____

_____

_____

12/24/14
Date

_Leslie M Hertzion_
Signature

Counsel for:   PLAINTIFFS

## Federal Rule of Civil Procedure 7.1 Disclosure Statement

(a)    WHO MUST FILE; CONTENTS.  A nongovernmental corporate party must file
two copies of a disclosure statement that:

    (1)    identifies any parent corporation and any publicly held corporation
owning10% or more of its stock;  or

    (2)    states that there is no such corporation.

(b) TIME TO FILE; SUPPLEMENTAL FILING.  A party must:

    (1)    file the disclosure statement with its first appearance, pleading,
petition, motion, response, or other request addressed to the court;
and

    (2)    promptly file a supplemental statement if any required information
changes.

OCT 2 4 2014

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

14-CV-6082

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
ANTER ASSOCIATES, L.P. and
H.A. STEEN INDUSTRIES, INC.

## DEFENDANTS
BOROUGH OF RIDLEY PARK

14   6082

**(b)** County of Residence of First Listed Plaintiff  Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Delaware County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Leslie M. Gerstein, Esquire, 3201 S. 26th Street, Philadelphia
PA, 19145

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☒ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Matters |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
First and Fourteenth Amendment, Sherman Act - 15 U.S.C. Section 1 et seq.
Brief description of cause:
Unfair Competition; Violation of First Amendment Rights, Related State Claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE

DOCKET NUMBER   OCT 2 4 2014

DATE
10/24/2014

SIGNATURE OF ATTORNEY OF RECORD
*Leslie M. Gerstein*

J.T.

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| ANTER ASSOCIATES and H.A. STEEN INDUSTRIES, INC. | : | CIVIL ACTION |
| v. | : | 14          6082 |
| BOROUGH OF RIDLEY PARK | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (☑)

| | | |
|---|---|---|
| October 24, 2014 | Leslie M. Gerstein | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 952-3549 | (215) 755-6955 | LeslieG@Steen.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

OCT 2 4 2014

14   6082

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __3201 S. 26th St, Phila PA 19145__

Address of Defendant: __105 E. Ward St, Ridley Park PA 19078__

Place of Accident, Incident or Transaction: __Ridley Park PA 19078__
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*
Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☒ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) __1st & 14th Amendment__

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, __Leslie M Gerstein__, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: __10/24/14__   _Leslie M Gerstein_   __40952__
Attorney-at-Law   Attorney I.D.#

OCT 2 4 2014

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __10/24/2014__   _Leslie M Gerstein_   __40952__
Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)